UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HORELL CRUZ and LISA CRUZ, individually and as parents of three minor children,<br><br>Plaintiffs,<br><br>v.<br><br>BURGER KING CORPORATION and MASTORAN CORPORATION<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY DEMAND

This Complaint concerns the tortious, discriminatory conduct of the manager of a fast-food establishment, the negligent retention of that manager despite prior misconduct, and the impact that the overall incident continues to have on Plaintiffs and their three young children.

## PARTIES

1. Plaintiff Horrell Cruz ("Mr. Cruz") is an individual who resides in Beverly, Massachusetts.

2. Plaintiff Lisa Cruz ("Ms. Cruz") is an individual who resides in Beverly, Massachusetts.

3. Mr. and Ms. Cruz (together with their children, the "Cruz Family") are married and have three daughters under the age of eighteen who reside with them in Beverly, Massachusetts.

4. Defendant Burger King Corporation ("Burger King") is a corporation incorporated under the laws of the State of Florida and registered to do business in the Commonwealth of Massachusetts. Upon information and belief, there are over 140 Burger King restaurants in Massachusetts.

1

5. Defendant Mastoran Corporation ("Mastoran") is a corporation incorporated under the laws of the Commonwealth of Massachusetts.

6. Mastoran is the franchisee and owner/operator of the Burger King restaurant located at 1385 White Mountain Highway in Conway, New Hampshire (the "Conway BK").

7. On information and belief, Mastoran owns and operates a total of 43 Burger King Restaurants in Massachusetts, Maine, and New Hampshire pursuant to one or more franchise agreements with Burger King setting forth the terms and conditions under which Mastoran may own and/or operate its Burger King establishments and the standards to which Mastoran must adhere to hold its establishments out as Burger King restaurants.

## JURISDICTION AND VENUE

8. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 because Plaintiffs bring this action under federal law and supplemental jurisdiction over the Cruz Family's related state and common law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same claim or controversy as the Cruz Family's federal claim.

9. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because Defendant Mastoran is a Massachusetts corporation and Defendant Burger King is registered to do business in the Commonwealth of Massachusetts and indeed conducts business within the same. The same facts provide this Court with personal jurisdiction over Defendants.

## FACTS

10. Mr. Cruz speaks Spanish as his first language and has a dark complexion and other physical features indicative of a person of color of non-white Hispanic ancestry.

11. The Cruz Family enjoys visiting the White Mountains in New Hampshire and took family vacations to that area twice a year for some time prior to July 2019.

12. Over the 2019 July 4th holiday weekend, the Cruz Family travelled to North Conway, NH, where they spent quality time together as a family, visited Storyland, and engaged in some of the numerous outdoor activities available in the area. Mr. and Mrs. Cruz also enjoyed some much-needed rest from their respective jobs.

13. On July 8, 2019, the Cruz Family ended their vacation and began their trip back to Beverly, MA. As they left North Conway, the Cruz Family decided to stop at the Conway BK, where they planned to order some food via the Conway BK's drive-thru to eat on the ride home.

14. At the Conway BK drive-thru ordering station, Mr. Cruz ordered a $5.00 Whopper meal for himself and $1.50 worth of chicken nuggets for his three children, for a subtotal of $6.50.

15. Doug Waterman, an employee at the Conway BK, was working at the drive-thru payment window at that time.

16. When he pulled up to the Conway BK drive-thru payment window, Mr. Cruz was surprised to hear from Mr. Waterman that he had been charged in excess of $12.00. Mr. Cruz explained, politely, that the Whopper meal and chicken nuggets he ordered should have totaled only about $6.50.

17. Mr. Waterman reacted rudely and attempted to correct Mr. Cruz concerning the nature of his order, condescendingly describing to Mr. Cruz the distinction between a "regular-sized" value meal and a "medium-sized" value meal. Mr. Waterman further asked whether Mr. Cruz could read English.

18. Mr. Cruz calmly requested to speak with a Conway BK manager. "I am the manager!" Mr. Waterman screamed in response.

19. Mr. Cruz expressed his understandable shock that any Burger King employee, particularly a manager, would treat him in such a manner.

20. At this point, Mr. Waterman became visibly enraged and began to berate Mr. Cruz. Mr. Waterman then picked up a full fountain drink and threw it at Mr. Cruz. The drink flew through the drive-thru payment window and exploded all over Mr. Cruz and into the Cruz Family's new 2019 Infinity QX SUV.  Luckily, Mr. Cruz was the only member of the Cruz Family struck by the fountain drink.

21. Mr. Waterman continued his tirade, yelling and swearing at the Cruz Family, and told Mr. Cruz "Listen, you Spanish piece of shit. I will meet you outside." At this point, Mr. Waterman ripped off his headphones, left the drive-thru window, and charged toward the Conway BK restaurant exit.

22. Still astonished, Mr. Cruz pulled forward from the drive-thru window to process the extent of what had just happened.

23. By that point, Mr. Waterman had stormed from behind the Conway BK counter, smashed a panel window inside the Conway BK with his fist, and reached the exterior set of doors at the Conway BK – where he smashed another glass panel with his fist on his way out of the restaurant.

24. The Cruz Family witnessed this entire, crazed pattern of conduct, as Mr. and Mrs. Cruz's three young daughters cried uncontrollably in terror that Mr. Waterman would proceed to attack them. Their fears were justified.

25. Mr. Waterman ran up to the Cruz Family's car, threw himself on top of it, and smashed on of its sideview mirrors. As the invoice attached hereto at **Exhibit A** shows, the Cruz Family ultimately had to pay $921.26 in parts and labor to repair the damage Mr. Waterman caused to their car. When Mr. Cruz attempted to open the door to exit the car and inspect this damage, Mr. Waterman slammed the door onto Mr. Cruz's leg. Mr. Waterman then ran away, got into a

car, and left the scene as Mr. Cruz, stunned by what had transpired, finally was able to leave his vehicle.

26. At this point, multiple customers approached the Cruz Family, stated they had witnessed the entire incident, and expressed their sheer shock and disbelief at what had transpired.

27. Another individual, who identified himself as the District Manager responsible for the Conway BK, also approached the Cruz Family. After attempting to explain that Mr. Waterman was "having a bad day," he made a half-hearted apology for his colleague's atrocious conduct and offered the Cruz Family some free food.

28. The damage, however, was done. Mr. Waterman's bigoted, violent tirade denied the Cruz Family the simple, transactional experience of purchasing and then enjoying a quick snack from a fast-food restaurant and replaced it with sheer trauma at the end of their family vacation.

29. Ms. Cruz got out of the Cruz Family's car and told the District Manager that she wanted the police called immediately, and the District Manager responded that he had called the authorities. After some time had passed, the police still had not arrived, so Ms. Cruz called the Conway Police, who informed Ms. Cruz that they had received a call regarding the incident but that the caller – the District Manager – had stated, inaccurately, that the situation was a mere dispute between employees that was under control and did not require police attention.

30. Upon realizing the police would not be coming to the scene – and had, in fact, been told not to arrive – Mr. and Ms. Cruz did their best to clean themselves up and to console their children, who were crying hysterically after witnessing such a disturbing incident. Next, they drove to the Conway Police Department to relay what had occurred in person. Other witnesses also provided statements to the Conway Police concerning the incident.

31. After providing their statements to the Conway Police, the Cruz Family began their trip home to Massachusetts in stunned silence at the dramatic, inexplicable and disturbing way that their family vacation ended. See attached hereto at **Exhibit B**.

32. Astonishingly, Mr. Waterman's inexcusable behavior towards the Cruz Family was not his first aggressive, inappropriate confrontation with a customer at the Conway BK. In or about August 2016, Mr. Waterman made national news after he threw sauces at a Conway BK patron and was arrested for assault and battery.[1] Local news sources also covered this incident, as reflected in the articles attached hereto at **Exhibit C**.

33. Based on the publicity arising from Mr. Waterman's prior conduct and arrest, Defendants knew or should have known of his violent tendencies – particularly toward Conway BK customers – and nonetheless chose to retain Mr. Waterman as an employee, in complete disregard for the safety of their patrons.

34. Despite their actual and/or constructive knowledge not only of Mr. Waterman's history of misconduct but his related criminal record, Defendants failed to act and thereby preserved the opportunity for Mr. Waterman to commit a similar assault in the future.

35. As a result of this negligent conduct, Mr. Waterman remained cocked and loaded to unleash this traumatic, bigoted assault upon the Cruz Family beginning from the Conway BK drive-thru window and continuing with physical violence to their vehicle and to Mr. Cruz himself.

## COUNT ONE
*Violation of 42 U.S.C. § 1981*

36. The Cruz Family repeats and restates the allegations contained in Paragraphs 1 - 35 of this Complaint, above, as if fully set forth herein.

---

[1] *See Burger King manager arrested for throwing sauce at a customer,* Fox News.com, November 27, 2016, https://www.foxnews.com/food-drink/burger-king-manager-arrested-for-throwing-sauce-at-customer (last accessed March 8, 2022) (also attached as part of **Exhibit C**, hereto).

37. Mr. Cruz, who was born in Puerto Rico, has a dark complexion and other physical features indicative of a person of color of non-white Hispanic ancestry.

38. Defendants, by and through their employee Mr. Waterman, discriminated against Mr. Cruz on the basis of Mr. Cruz's ethnic and racial characteristics.

39. This discriminatory conduct deprived Mr. Cruz and his family of the right to make and enforce a contract with Defendants, both to purchase food from the Conway BK and to enjoy the benefits, privileges, terms and conditions of that contractual relationship.

40. Defendants, by and through the conduct of their employee Mr. Waterman, therefore violated 42 U.S.C. § 1981.

## COUNT TWO
*Negligent Retention of an Employee*

41. The Cruz Family repeats and restates the allegations contained in Paragraphs 1 - 40 of this Complaint, above, as if fully set forth herein.

42. Defendants knew or should have known that their employee, Mr. Waterman, was arrested for assault after throwing sauce at a customer in or about August 2016, not only because this misconduct occurred at the Conway BK but also because Mr. Waterman's arrest was covered by local and national media.

43. Based on their actual and/or constructive knowledge concerning this incident, Defendants knew or should have known that Mr. Waterman, their employee, was unfit for his position because he represented a potential danger to their patrons and thereby had a duty to their current and future patrons – including but not limited to the Cruz Family – to terminate his employment.

44. Defendants violated their duty to protect the Cruz Family from Mr. Waterman by retaining him as an employee.

7

45. As a result of Defendants' violation of that duty, Mr. Waterman was in a position to – and in fact did – assault, batter and traumatize the Cruz Family and also caused damage to their vehicle.

46. Defendants' negligent retention of Mr. Waterman as an employee was a proximate cause of the bigoted, violent and unprovoked attack that the Cruz Family suffered at the Conway BK.

## COUNT THREE
*Assault*

47. The Cruz Family repeats and restates the allegations contained in Paragraphs 1 - 46 of this Complaint, above, as if fully set forth herein.

48. At all times relevant hereto, Mr. Waterman was an employee of Defendants, and Mr. Waterman was acting within the scope of his employment when he committed the tortious actions described herein.

49. As described herein, Mr. Waterman intended to cause harmful or offensive contact to Mr. Cruz and the Cruz Family.

50. Mr. Waterman's conduct put Mr. Cruz and the Cruz Family in imminent apprehension of such contact.

51. Mr. Cruz and the Cruz Family have suffered damages as a result of Mr. Waterman's misconduct, in an amount to be determined at trial, and Defendants are liable for any such damages by virtue of the doctrine of respondeat superior.

## COUNT FOUR
*Battery*

52. The Cruz Family repeats and restates the allegations contained in Paragraphs 1 - 51 of this Complaint, above, as if fully set forth herein.

53. At all times relevant hereto, Mr. Waterman was an employee of Defendants, and Mr. Waterman was acting within the scope of his employment when he committed the tortious actions described herein.

54. As described herein, Mr. Waterman intended to cause harmful or offensive contact to Mr. Cruz and the Cruz Family.

55. Mr. Waterman's conduct put Mr. Cruz and the Cruz Family in imminent apprehension of such contact.

56. Harmful contact to the person of Mr. Cruz resulted from Mr. Waterman's misconduct.

57. Mr. Cruz and the Cruz Family have suffered damages as a result of Mr. Waterman's misconduct, in an amount to be determined at trial, and Defendants are liable for any such damages by virtue of the doctrine of respondeat superior.

## COUNT FIVE
*Intentional Infliction of Emotional Distress*

58. The Cruz Family repeats and restates the allegations contained in Paragraphs 1 - 57 of this Complaint, above, as if fully set forth herein.

59. At all times relevant hereto, Mr. Waterman was an employee of Defendants, and Mr. Waterman was acting within the scope of his employment when he committed the tortious actions described herein.

60. As described herein, Mr. Waterman's bigoted, violent and unhinged conduct directed at Mr. Cruz and the rest of the Cruz Family was beyond all possible bounds of decency and atrocious and utterly intolerable in a civilized community.

61. As described herein, that part of Mr. Waterman's bigoted, violent and unhinged conduct directed only at Mr. Cruz, in the immediate proximity of Ms. Cruz and the children in the

Cruz Family, was beyond all possible bounds of decency and atrocious and utterly intolerable in a civilized community.

62. The Cruz Family has suffered emotional distress as a result of Mr. Waterman's misconduct, and Defendants are liable for any related damages by virtue of the doctrine of respondeat superior.

### COUNT SIX
*Trespass to Chattel*

63. The Cruz Family repeats and restates the allegations contained in Paragraphs 1 - 62 of this Complaint, above, as if fully set forth herein.

64. At all times relevant hereto, Mr. Waterman was an employee of Defendants, and Mr. Waterman was acting within the scope of his employment when he committed the tortious actions described herein.

65. As described herein, Mr. Waterman, intentionally and without consent, interfered with the Cruz Family's use of their car, both by throwing himself onto the car itself in the course of his inexcusable, unhinged and bigoted fit of rage and prevented them from exiting the Conway BK drive-thru lane.

66. This incident of Mr. Waterman's intentional misconduct damaged the Cruz Family's car, which required costly repairs, and therefore also diminished its value.

67. As described herein, Mr. Waterman, intentionally and without consent, interfered with the use of Cruz Family's car by slamming the driver's side door as Mr. Cruz attempted to exit the vehicle.

68. This incident of Mr. Waterman's intentional misconduct caused personal damage to Mr. Cruz, whose leg was smashed between the driver's side door and the chassis.

69. Mr. Cruz and the Cruz Family have suffered damages as a result of Mr. Waterman's misconduct, in an amount to be determined at trial, and Defendants are liable for any such damages by virtue of the doctrine of respondeat superior.

## JURY DEMAND

The Cruz Family respectfully requests a trial by jury on all claims so triable.

## DEMAND FOR RELIEF

WHEREFORE, the Cruz Family prays for judgment against Defendants as follows:

(1) For a monetary award, in an amount to be determined at trial, for any and all damages, costs and fees available to the Cruz Family based on Defendants' violation of 42 U.S.C. § 1981.

(2) For a monetary award, in an amount to be determined at trial, for compensatory and consequential damages related to the harm suffered by Cruz Family by virtue of Defendants' negligent retention of Mr. Waterman.

(3) For a monetary award, in an amount to be determined at trial, for compensatory and consequential damages related to the harm suffered by Cruz Family at the hands of Defendants' employee, Mr. Waterman.

(4) For all such other and further relief as the Court deems just and appropriate.

        Respectfully Submitted,

        HORELL CRUZ and LISA CRUZ,
        individually and as parents of three minor children,

        By their attorneys,

        /s/ *D. Scott Dullea*
        Keith L. Sachs (BBO# 634025)
        D. Scott Dullea (BBO# 670416)
        DDSK LAW LLC
        900 Cummings Center, Suite 210U
        Beverly, MA  01915
        978-338-6620
        ksachs@ddsklaw.com
        sdullea@ddsklaw.com

Dated:  March 8, 2022